MAX SHULMAN *vs.* THE HARTFORD PUBLIC LIBRARY.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued December 5th, 1934—decided February 5th, 1935.

*Frank A. Hagarty,* for the appellant (defendant).

*Albert S. Bill,* for the appellee (plaintiff).

HAINES, J.   The plaintiff, owner of certain premises in the city of Hartford, executed a written lease to the defendant for the term of two years from November 1st, 1928, with an option to the defendant for a renewal for a further term of one year.   Rental for the first year was fixed at $1080, payable $90 per month, and for the second year, $1200, payable $100 per month, and if the option was availed of by the defendant, the rent for the third year was to be the same as for the second.

The defendant entered into possession and paid the

rent for the full two-year term of the written lease but chose not to exercise the option to renew for a third year. Instead, before the expiration of the two-year term, it caused to be prepared and tendered to the plaintiff for his acceptance and signature, another written lease for the same premises for two years beginning November 1st, 1930, at a yearly rental of $1200, payable $100 per month, with an option to the defendant for a renewal for a further term of two years at the same rental. The plaintiff told the defendant the proposed lease was satisfactory but suggested the insertion of a clause permitting the building by the plaintiff of a stairway leading to another part of the building, if the need arose, which would require taking about four feet of the frontage of the building and reducing the floor space sixty to eighty square feet, and if the contingency arose, he was willing to make some provision for a reduction of the rental. He also said he was satisfied with the defendant as a tenant. To all this the defendant made no reply. The finding says: "Shulman thereupon made an offer to the said Temple [who acted for the defendant] to carry the defendant on a yearly basis at the same rental in the event they did not come to an agreement concerning the stairway. To said offer, said Temple made no reply. There was no further conversation between said Shulman and said Temple in regard to the lease, or in regard to the stairway."

The evidence justifies the request of the defendant that there be added to the finding, in substance, that the defendant did not at any time, orally or in writing, agree to the reservation or to remain a tenant for another term; that on several occasions soon after the negotiations referred to and after the expiration of the written lease, the plaintiff offered the defendant other properties in lieu of that it was occupying, and each

of these was rejected after inspection, by the defendant. On May 10th, 1933, the plaintiff, by his son, wrote the defendant offering it for rent for its branch library, two stores on the south side of Park Street in the Rivoli Theater building, to be used instead of the store at 1778 Park Street, and offered to "work out a satisfactory rental, and also to work out a reduction in the rental of your present location." Where a party requests the finding of certain facts which have been proved, a trial court is seldom justified in omitting them from the finding because it deems them immaterial. *Senzamici* v. *Waterbury Castings Co.*, 115 Conn. 446, 450, 161 Atl. 860. Nothing seems to have come from these further negotiations, and the defendant remained in undisturbed possession to the end of May, 1933, paying the plaintiff $100 per month, and then vacated the premises after notice of its intention to do so. It was then informed by the plaintiff that it must pay for the months of June, July, August, September and October of that year, at the rate of $100 per month. Upon the defendant's refusal the present action was brought. The finding also states, in substance, that there were no quarters in the vicinity which were suitable for the defendant's purposes, and that the defendant's desire to obtain a lease for a long term was because of the difficulty of obtaining new quarters at short notice.

The trial court sustained the contention of the plaintiff that, upon the disclosed facts, the defendant, in holding over, was a tenant from year to year, rather than from month to month as the defendant claimed, and therefore liable to the plaintiff for the balance of a yearly term, five months, at $100 per month. The defendant claims that its contention is supported by the statute: "No holding over by any lessee, after the expiration of the term of his lease, shall be evidence

of any agreement for a further lease; and parol leases of lands or tenements reserving a monthly rent and in which the time of their termination is not agreed upon shall be construed to be leases for one month only." General Statutes, § 5021.

Before this statute was enacted in 1866, it was the law in this State that if a tenant held over after the expiration of a fixed tenancy of a year, he was responsible to the landlord for another year upon the same terms. *Bacon* v. *Brown,* 9 Conn. 334, 338. But this was at the option of the landlord and he could either acquiesce in the tenancy or refuse and treat the tenant as a trespasser or a tenant by sufferance. If he received the yearly rent or otherwise indicated his acquiescence, a tenancy from year to year resulted by operation of law. *Coleman* v. *Brigham,* 115 Conn. 286, 288, 161 Atl. 236; 1 Swift's Digest, s.p. 91; 16 R. C. L. p. 1163, § 684. The effect of the statute is to abrogate this common-law rule and a mere holding over with consent of the landlord no longer creates a tenancy from year to year, but such a tenancy can only be established by proof of an agreement of both of the parties. *Coleman* v. *Brigham,* 115 Conn. 286, 289, 161 Atl. 236; *Miller & Co.* v. *Lampson,* 66 Conn. 432, 34 Atl. 79; *Griswold* v. *Branford,* 80 Conn. 453, 458, 68 Atl. 987; *Johnson* v. *Mary Oliver Candy Shops, Inc.,* 116 Conn. 86, 90, 163 Atl. 666; *Williams* v. *Apothecaries Hall Co.,* 80 Conn. 503, 69 Atl. 12.

The plaintiff concedes that the mere fact of the holding over by the defendant is not evidence of an agreement for a further lease; he insists, however, that the offer to carry the defendant on a yearly basis was, in legal effect, accepted by the conduct of the defendant in continuing to occupy the premises and paying rent for thirty-one months at the rate of $100 per month, no specific rejection of the plaintiff's offer

being shown. An acceptance of an offer though not express may sometimes be shown by words, acts or conduct indicating assent to the proposal and thus create a contract. *Raff Co.* v. *Murphy*, 110 Conn. 234, 239, 147 Atl. 709; *Maltby, Inc.* v. *Associated Realty Co.*, 114 Conn. 283, 288, 158 Atl. 548; *Collins* v. *Lewis*, 111 Conn. 299, 304, 149 Atl. 668; *Loomis* v. *Fifth School District*, 109 Conn. 700, 145 Atl. 571; *Canfield* v. *Sheketoff*, 104 Conn. 28, 35, 132 Atl. 401. Likewise, under some circumstances, where the offeree fails to reply to the offer, his silence and inaction may constitute an implied acceptance, but circumstances may be such that acceptance will not be presumed. Amer. Law Institute Restatement, Contracts, Vol. 1, § 72. So if the silence or inaction has an uncertain or ambiguous meaning, and the parties have reasonable differing views as to what was in fact meant, then there is no acceptance. "If both parties know or have reason to know that the manifestations of one of them are uncertain or ambiguous and the parties attach different meanings to the manifestations, this difference prevents the uncertain or ambiguous manifestations from being operative as an offer or an acceptance." Amer. Law Institute Restatement, Contracts, Vol. 1, § 71 (b). An intentional assent by the defendant in the case at bar was not requisite to the establishment of a contract, provided the silence or inaction could convey but one reasonable meaning. If there be more than one reasonable meaning, it must be determined which meaning is to be attributed to the silence. Amer. Law Institute Restatement, Contracts, Vol. 1, § 71 (b); Comment.

The plaintiff had refused to give a two-year lease without the reservation of a right to build a stairway at his option; the defendant had refused to accept a lease with that reservation in it, presumably because

the loss of sixty to eighty square feet of the floor space would render the premises less desirable for the purposes of a library. The plaintiff then made his offer "to carry the defendant on a yearly basis at the same rental in the event they did not come to an agreement concerning the stairway." This offer is ambiguous. They had already failed to come to an agreement. Did the condition attached to the offer have reference to the then existing inability to agree, or did it refer to a future failure to reach an agreement? If we attach the latter meaning to it, there is nothing in the record to show whether this condition had been met so that the offer could be considered open to acceptance when the defendant began to hold over. We do not know whether the plaintiff at the time the holding over began, had retained the stairway privilege or had waived it. But aside from the condition, the offer itself is of uncertain meaning. An offer must be complete so that unequivocal acceptance will fix the rights of the parties. Occurring when and as it did, this "offer" suggests rather an invitation to continue negotiations for a contract. *Berry & Sons, Inc.* v. *Western Union Telegraph Co.*, 109 Conn. 371, 374, 146 Atl. 501. Did "yearly basis" mean a tenancy for a year, or from year to year, on a basis of $1200 for each twelve months? The terms the defendant had proposed were to hire the property in the condition it then was without the stairway reservation, and the terms the plaintiff had proposed included the reservation. Did the language used at the time as it appears in the record, mean that finding his offer of a two-year lease with the reservation was not acceptable, the plaintiff was now offering to make a lease for one year or for a year at a time with the reservations? The offer is capable of two or more interpretations and is not so clear and definite as to have but one reasonable meaning. We

conclude that at the time the holding over began the minds of the parties had not met upon a definite agreement for a new lease.

This conclusion is strengthened by the fact that soon after, the parties began further negotiations for different quarters for the defendant. If they had both considered that there was already an existing contract for a year, it is not reasonable to suppose that new quarters would be sought by both, certainly in the absence of some understanding that the existing lease was to be cancelled, and there is nothing before us to suggest such an understanding. Rather, their conduct indicates that they had been unable to agree upon a lease of the quarters the defendant was occupying because of a difference over the stairway privilege and were trying to find common ground as to some other building so that the plaintiff could retain the defendant as a tenant and the latter could have quarters on a basis satisfactory to it.

We hold that neither the offer nor the claimed acceptance are sufficiently clear and definite to warrant a finding that the holding over created a lease from year to year. The facts bring the case squarely within the terms of the statute and render the holding over a tenancy from month to month.

There is error; the cause is remanded with direction to enter a judgment for the defendant.

In this opinion the other judges concurred.