THE SILLIMAN AND GODFREY COMPANY *vs.* TOWN OF WESTPORT.

Third Judicial District, Bridgeport, April Term, 1930.

WHEELER, C. J., MALTBIE HAINES, HINMAN and BANKS, Js.

Argued April 11th—decided June 2d, 1930.

*Raymond E. Baldwin,* for the appellant (defendant).

*David S. Day* and *Maurice E. Resnick,* with whom, on the brief, was *Jacob B. Klein,* for the appellee (plaintiff).

HINMAN, J. The defendant interposed a special defense alleging that the town had expended for the construction of Weston Road and Cross Highway, including engineering, expenses of building two bridges, and other expenses incidental to and necessary in connection with the improvement of these roads, the sum of $230,556.65, which payments used up all of the funds appropriated and available for the purpose, and that the town had no funds appropriated to pay the claims set forth in the complaint. This defense is predicated upon the contention that the plaintiff was bound to take notice of the scope and limitations of the powers of the selectmen under the town votes of March 2d, 1925, and March 25th, 1926, together with the provisions of §§ 58, 405, and 406 of the General Statutes, and to know, therefrom, that they had no authority to so contract as to involve the town in expenses, for the construction of these highways, in excess of the amounts of the appropriations made for that purpose. The general rule to this effect is undoubted and the soundness of the

underlying reasons as applied to dealings with municipal officers and agents is obvious. *Turney* v. *Bridgeport,* 55 Conn. 412, 12 Atl. 520; *Thomas Motor Car Co.* v. *Seymour,* 92 Conn. 412, 103 Atl. 122; *Lucier* v. *Norfolk,* 99 Conn. 686, 695, 122 Atl. 711; 2 Dillon on Municipal Corporations (5th Ed.) § 775. A town by acting specifically upon the subject-matter divests its officers or agents of power and authority to contract other than in conformity to the vote of the town. *Turney* v. *Bridgeport, supra,* p. 416.

Here no question can be made that the terms of the contract entered into by the plaintiff, since it limited the work to be done to "the amount that may be reasonably constructed within the appropriations now made," was within the authority conferred upon the selectmen. However, the total price of the material to be furnished and services to be rendered by the plaintiff necessarily was incapable of exact ascertainment at the inception of the contract and must so remain, to some extent, practically until the completion of performance under it. The amount of highway construction work which could be accomplished depended upon several indefinite elements, including, so far as the plaintiff's performance was concerned, the discretion of the selectmen as limited by the votes of the town, and the lack of plans, specifications, and grades of Cross Highway, which were not prepared at the date of the contract but were furnished by the town engineer from time to time as the work progressed. Further, if we adopt the defendant's construction of the contract, there was to be taken into account the expense of building two bridges "in a manner to be prescribed by the selectmen" and (included in the expenses incidental and necessary in connection with the improvement of the roads) for property purchases for straightening

and widening, also grading, bank walls, landscaping, etc., in lieu of land damages, and other similar expenses which could only be ascertained as the work went forward. In this respect the situation differs widely and essentially from that in *Turney* v. *Bridgeport, supra,* where the only contract expense chargeable against the appropriation other than that under the Turney contract was for heating, ventilation and plumbing, which contract price, it was observed, Turney either knew or could easily have ascertained, and must be treated as contracting with reference thereto.

The defendant's contention is, in effect, that it was not only the duty of the plaintiff to ascertain that its contract, when made, was within the authority of the selectmen (as it clearly was) but that it was also incumbent upon the plaintiff, at peril of loss of right to full compensation, to know the total amount available from or on account of the town appropriations, including the balance from the Shore Road, and incidental additions, and to so completely keep watch and check upon all of the expenditures made and obligations incurred by the town on account of the construction work and pertaining thereto, as to be informed when all such expenditures and obligations equalled and exhausted the moneys available through the appropriations. This involves an extension in application of the above mentioned principle of law far beyond *Turney* v. *Bridgeport* or any of the subsequent cases, and further than authority supports or reason dictates. The situation of the parties and the provisions of the contract itself render the imposition of such a requirement most illogical and unjust.

As we have seen, under the contract control of the amount of work to be done by the plaintiff, beyond the construction of Weston Road, as well as the specifications and other requirements materially affecting the

cost of the work, resided entirely in the town, through its selectmen; the plaintiff's operations were under the constant supervision and direction of the select-men and their representatives; the amount of the re-spective progress payments was dependent solely upon estimates made by the defendant's engineer; the selectmen, in specifically directing completion of Cross Highway, were within their rights under the contract, so far as plaintiff was concerned, and a re-fusal to comply would have constituted an apparent breach—this direction was more than misleading, it was, in fact, compelling.

Further, the means of knowledge or ascertainment possessed by the defendant,. as to the total amount available, through additions to the amount of the special bond issue by balance from Shore Road ac-count, premiums on bond sale, interest, etc., were, at least, vastly superior to those of the plaintiff. The unexpended balance in the appropriation account could, as of any given date, be determined only by ascertaining the expenditures made and all obliga-tions incurred up to that time, and deducting the aggregate thereof from the total amount available under the appropriations. It is not too much to say that this could be done only by those (the defendant's agents) who alone had, or are to be presumed to have had, knowledge of all such expenditures and commit-ments. The plaintiff is hardly to be penalized, situ-ated as it was, for failing to do that which, the event proves, the defendant with all its facilities and oppor-tunities apparently was unable to do, or at least did not do, with even approximate accuracy, until after the appropriation actually had been exceeded. In-deed, the trial court has found it impossible to make such calculation as of any earlier date from facts proven by the defendant upon the trial.

We note, in passing, that it appears to be undisputed that payments aggregating about $14,000 were made to bridge contractors on and after December 1st, after the selectmen had discovered that the appropriation was exhausted, as evidenced by the resolution of November 30th. No sufficient reason is suggested why these, as well as other smaller bills, were afterward paid in full, and the plaintiff left to carry the deficit to the full extent of the unpaid balance due it.

We regard as most important and compelling, however, the consequence of the finding (paragraph thirty-five) that the amount—$29,336—found to remain owing to the plaintiff, consists entirely of withheld percentages of progress payments—provided by the contract to be fifteen per cent of the amount determined by the town's engineer, from month to month, to have been earned by the plaintiff. These successive balances, although the contract provided that payment thereof be deferred until sixty days after the completion of the work, are properly to be treated as having been allocated to the plaintiff's credit at the time the amount so earned was ascertained and the partial payment thereon made. The obligation therefor is to be considered as accruing at the time of such ascertainment and partial payment, and before the appropriations were exhausted by payments and ascertained accrued obligations to other parties. At least the defendant is effectually estopped, not having notified the plaintiff of the exhaustion of the appropriation, as it was in duty bound to do, from denying liability for the amount of such withheld percentages, except, possibly, as the accrued total might have been affected by final and corrected computations by the engineer, or by the results of defects and deficiencies in completion of the contract, neither of which contingencies are so present here as to reduce the amount

520

recoverable. *People ex rel. Dannat* v. *Comptroller,* 77 N. Y. 45, 50; *Swift* v. *Mayor,* 83 N. Y. 528, 536; *American Metal Ceiling Co.* v. *New Hyde Park Fire District,* 154 N. Y. Supp. 661, 664.

The foregoing considerations are ample, upon manifest principles of equity and good conscience, to support the conclusion that the defendant is estopped to deny liability, and to confirm the resulting judgment. *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 28 Atl. 321; *Vito* v. *Simsbury,* 87 Conn. 261, 87 Atl. 722; *Newfield Building Co.* v. *Mohican Co.,* 105 Conn. 488, 500, 136 Atl. 78. There is, therefore, no occasion to test the validity of the further conclusion of the trial court that the defendant was acting in the performance of a governmental duty to build and repair necessary highways and the plaintiff's contention that, for this reason, lack or exhaustion of appropriation is not a defense. Most of the requested corrections of the finding which might be granted are addressed to this phase of the case.

For the same reason we do not pass upon the plaintiff's claim that the amount expended for the two bridges is not properly chargeable against the appropriation, under the terms of the votes, or determine the propriety of the action of the selectmen in paying, from the appropriation, the purchase price of property, and for improvements to private premises in lieu of such purchase price, and other similar items; also the question whether the amount of the balance of the Shore Road appropriation was sufficiently proved becomes of no material importance. The fact that the roads in question were used by the town after their completion affords, of itself, no ground for estoppel. *Loomis* v. *Fifth School District,* 109 Conn. 700, 145 Atl. 571. Recovery under the second count for the price of culvert pipe unused as a result of a change of

specifications, was proper also, and for the additional reason that, being available to the town for use wherever needed, it was properly chargeable against the general appropriations made by the town for maintenance of highways.

There is no error.

In this opinion the other judges concurred.